# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0345, <u>State of New Hampshire v. Brittany Boggs</u>, the court on December 7, 2017, issued the following order:**

Having considered the memoranda filed in response to our orders of October 2 and 25, 2017, relative to bail, and the record provided on appeal, we conclude that oral argument is unnecessary to resolve the bail issue. We assume, without deciding, that the bail issue is properly before us in this appeal, and we uphold the trial court's decisions denying the defendant's requests for bail pending appeal.

RSA 597:1-a (Supp. 2016) governs a request for bail pending appeal. It provides that, for a person who has been convicted of a felony and sentenced to imprisonment, bail is generally not available, unless that person establishes:

> (1) By clear and convincing evidence, taking into consideration the nature of the crime and the length of the sentence imposed, that the person is not likely to fail to appear to answer the judgment following the conclusion of the appellate proceeding, or to pose a danger to himself or herself or to any other person or the community, or to intimidate witnesses, or otherwise to interfere with the administration of justice; and

> (2) By a preponderance of the evidence that the appeal will not likely be frivolous or taken merely for delay.

RSA 597:1-a, III(a). Whether to grant bail pending an appeal is a matter left to the trial court's sound discretion. <u>State v. Marini</u>, 117 N.H. 71, 73 (1977). We will reverse the trial court's decision only on compelling evidence. <u>Id</u>.

The defendant, Brittany Boggs, was convicted, following a jury trial in Superior Court (<u>Ignatius</u>, J.) on two charges of issuing bad checks, <u>see</u> RSA 638:4 (2016), one in the amount of $8,517.27, and the other in the amount of $1,315.73. She was sentenced to serve a stand-committed state prison term of four to eight years, with a concurrent term of one-and-a-half to three years.

The record reflects that, in 2007, prior to the criminal conduct at issue in this case, the defendant pleaded guilty to three charges of theft by unauthorized taking for stealing substantial sums of money from prior

employers. She was ordered to pay a total of $346,160.01 in restitution, and received a state prison sentence of seven-and-a-half to fifteen years.

The defendant was released on home confinement on August 29, 2009, to be supervised until August 29, 2021. Following her release, the defendant worked for, and embezzled approximately $30,000 from, an attorney. According to the State's sentencing memorandum, the attorney agreed not to report the theft to law enforcement or the defendant's parole officer based upon the promise of her family to repay the stolen funds.

The defendant issued the checks at issue in this case on December 13, 2014, to a business that had hosted her wedding reception. According to the State, the defendant "was given multiple opportunities to make payment and had several excuses why payment was further delayed," and as of the May 17, 2017 sentencing hearing, she had not yet paid for the wedding. At the time of sentencing, the defendant was awaiting trial in another case in which the State alleged that she had written bad checks to a business in 2014 and 2015.

Following the defendant's convictions on February 28, 2017, the State requested that the trial court impose a cash bail requirement of $5,000 pending sentencing, arguing that the case had a "lengthy history" of delays caused by defendant for "medical issues, and the like, that did not come to light," that she was awaiting trial in another case, and that the State was concerned "that this could be a delay or turning to a failure to appear situation." The defendant countered that she could not afford $5,000, that she had exhibited good behavior throughout the case, that she had appeared at court hearings, and that she had young children. The trial court asked whether, in a prior case, the defendant had fled the jurisdiction. She responded that the incident to which the court referred was a vacation, and that, at the time she had left for that vacation, she had not yet been charged. The trial court imposed a $2,500 cash bail term pending sentencing, explaining that there had been "a long series of representations and misrepresentations, and explanations and excuses, . . . all of which adds up to a whole lot of delay and attempt to mislead," and that the court was "more skeptical than [it] would be in the normal course on promises to abide by court rules and bail orders."

At the May 17, 2017 sentencing hearing, after the trial court imposed a stand-committed prison term, the defendant requested that the sentence be stayed pending an appeal. She argued that she had previously surrendered herself on a parole revocation warrant, that she had attended all required court hearings, that she was still facing criminal charges in another case, that she had children and was married, that she had ties to the community, and that her appeal was not frivolous. The State objected, arguing that the defendant had caused multiple delays in the case, including some delays it suspected she had intentionally caused, that she had been arrested in a prior case upon her return from vacation, that it disputed, therefore, that she was not a flight risk,

and that it disputed that her appeal had merit. With respect to her arrest in the prior case, the defendant countered that she was not aware that any warrant had been issued in that case until she had returned from her vacation. The trial court denied the request, finding no basis for it, and noting that "we have had such tremendous delay getting to this point, from conviction in February to sentencing finally in May."

Following her filing of the present appeal, the defendant filed a motion for bail pending appeal in the trial court. See State v. Gubitosi, 153 N.H. 79, 81 (2005) (observing that bail pending appeal is an "independent matter" over which the trial court retains jurisdiction notwithstanding an appeal). She argued that she had been granted bail pending sentencing, that the statutory standards for bail pending appeal were "essentially the same" as the standards for bail pending sentencing, that she had appeared at the sentencing hearing, and that her appeal was not frivolous. The State objected, arguing that the defendant had "continuously delayed the proceedings even claiming to have" cancer, that the case "was pending for an extraordinary amount of time", that the "history of this case suggests [that the] appeal is frivolous and taken merely for delay," and that the defendant was a flight risk, having previously "left the country" to be "arrested on her return from the tropics." The trial court denied the motion, finding that "[t]he defendant has not been forthright with the court," and that "there are concerns regarding her potential risk of flight."

The defendant moved for reconsideration, asserting that, with respect to the vacation, she had entered Barbados on October 18, 2005, and that the indictments for which she was arrested were not returned until October 20, 2005. The trial court denied the motion, finding that the defendant had failed "to establish by clear and convincing evidence that she is 'not likely to fail to appear' at the conclusion of the appellate proceeding or that, by a preponderance of the evidence, . . . her appeal is not frivolous." The court noted that it was "familiar with the evidence at trial, [the defendant's] lack of candor to the Court, and the further felony charge now scheduled for trial," and that "[t]his information creates an on-going concern that the defendant may fail to appear or is merely seeking to avoid and/or delay incarceration."

We subsequently granted the defendant's motion to add the denial of bail pending appeal as an issue in this appeal. See Sup. Ct. R. 16(3)(b). Thereafter, the defendant filed a self-represented renewed motion for bail pending appeal in the trial court, and we granted her counsel's assented-to motion to stay the appeal so that the trial court could consider it. At a subsequent hearing, the trial court declined to rule on the renewed motion, but clarified its rationale for denying bail as follows:

> The concerns that I have are that there has been a pattern in this
> case, or maybe pattern's a bad word, that there has been instances
> of a lack of honesty to the Court, misrepresentations, and that the

3

nature of the conviction itself involves a lot of testimony that had to do with lack of honesty and forthrightness, and that I do not feel comfortable, did not then, and still do not feel comfortable with a – granting the request for bail pending appeal. I don't see that there's a basis for it in this situation.

And so there's – you know, if we consider this as sort of an oral motion to reconsider that, to look at it once again, I still find no basis for it. I am not basing this on a belief that there was a flight out of the country. I know that that's something that some people have represented. I don't know what the truth is about that. I've heard conflicting explanations about it, and since I don't know what the circumstances were, I know that [the defendant] says it was a planned vacation, and it was totally unrelated, and the State has suggested that it's a – was an intention to evade the jurisdiction, I don't know, so I'm not relying on that, that's not the basis for my decision.

On appeal, the defendant argues that "neither the State nor the [trial] court ever articulated a concern about dangerousness." She further argues that, with respect to her risk of flight, the evidence was undisputed that she attended all proceedings at which her attendance was required, that she has ties to the community, and that she is a mother of small children and the ex-wife of a law enforcement officer. She further argues that, as to the Barbados trip, the trial court ultimately "declined to rely on that event as tending to show a risk of flight," and that "the court made no other findings tending to support a conclusion that [she] posed a risk of flight." Finally, with respect to whether the appeal is frivolous or taken merely for delay, the defendant argues that the appeal is not frivolous for purposes of State v. Blum, 132 N.H. 396, 400-01 (1989), and that the trial court never specifically addressed why her claims were frivolous. Thus, she argues that, as a matter of law, any findings with respect to her risk of flight or frivolousness of the appeal are unsupported by the evidence. According to the defendant, the trial court's references to the delays the defendant caused in the trial proceedings or her lack of candor are not relevant to the statutory factors under RSA 597:1-a, III. We disagree.

It was the defendant's burden under RSA 597:1-a, III(a) to prove by clear and convincing evidence, "taking into consideration the nature of [her] crime[s] and the length of the sentence imposed, that [she] is not likely to fail to appear to answer the judgment following the conclusion of the appellate proceeding, or to pose a danger to . . . herself or to any other person or the community." It was not the State's burden to prove that she would fail to appear or was dangerous. Moreover, although the trial court was required to "provide for the record [its] reasons" for denying the request for bail pending appeal, RSA 597:1-a, V, at no point did the defendant request specific findings with respect to the statutory elements, see State v. Addison (Capital Murder), 165 N.H. 381,

4

443 (2014), and we ordinarily assume that the trial court made all findings necessary to support its decision, see State v. Silva, 158 N.H. 96, 102 (2008).

Here, the trial court expressed its rationale multiple times for denying bail by emphasizing the defendant's lack of candor and trustworthiness as evidenced by her conduct in the case and the nature of her crimes. In context, we construe the trial court's rulings as having determined that the defendant failed to carry her burden of proof as to the statutory elements under RSA 597:1-a, III(a). We note that, although the trial court ultimately declined to rely upon the defendant's 2005 Barbados trip as evidence of her risk of flight, it did not determine that she had in fact proven that she was not a flight risk. That the defendant had been dishonest with the court, had substantially delayed the proceedings, and had committed the present fraud crimes and other acts of fraud while on parole for fraud crimes supports the trial court's determination that she was not trustworthy and, thus, had not proven that she would answer the trial court's judgment following an unsuccessful appeal. Moreover, despite the defendant's assertion that "neither the State nor the [trial] court ever articulated a concern about dangerousness," we agree with the State that evidence that the defendant had committed serious fraud crimes while on parole for prior serious fraud crimes demonstrates that she was, in fact, a danger for purposes of RSA 597:1-a, III(a). To the extent the defendant argues that the State did not raise this argument in the trial court, we again emphasize that the State did not bear the burden of proof under RSA 597:1-a, III(a). Cf. State v. Santana, 133 N.H. 798, 808-09 (1991) (declining to consider ground supporting denial of motion to suppress that State did not raise in trial court because State bore burden of proof at trial as to constitutionality of search). Upon this record, we conclude that the trial court reasonably could have found that the defendant failed to carry her burden of proof.

Dalianis, C.J., and Hicks, Lynn, and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**